UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
)
MATTHEW K. KASSEL,                      )          Case No.: 14-CV-8922/KMK
                                        )
                                        )
                         Plaintiff,     )
        -against-                       )
                                        )
                                        )
THE CITY OF MIDDLETOWN, JOSEPH          )          Date: September 15, 2016
DESTEFANO, TOM AMODIO, SAM BARONE,      )
NICHOLAS BARBER, LOU MORSE, DON LUIS,   )
PAUL SMITH and MICHAEL DEMCHAK,         )
                                        )
                         Defendants.    )
_____)


_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
_____



Submitted by:

Kelly Magnuson, Esq.
Senior Counsel

TULLY RINCKEY, PLLC
441 New Karner Road
Albany, NY 12205
Phone: (518) 218-7100
Fax: (518) 218-0496
Email: kmagnuson@tullylegal.com

*Attorneys for Plaintiff Matthew Kassel*

## TABLE OF CONTENTS

INTRODUCTION..............................................................................................................1

PRELIMINARY STATEMENT......................................................................................1

ARGUMENT......................................................................................................................1

    **POINT I**
    **MIDDLETOWN FAILED TO PROVIDE ANY EVIDENCE TO**
    **SUPPORT THEIR ENTITLEMENT TO SUMMARY JUDGEMENT**.....................1

        A.   *Middletown Misstates The Bases of Plaintiff's Claims*............................................2

        B.   *Middletown Concedes That The Material Facts*
            *Supporting Plaintiff's Claim Are in Dispute*.............................................................3

        C.   *Middletown's Arguments Erroneously Assume*
            *Plaintiff's Obligation to His Military Service Was*
            *Properly Considered In The Decision Not to Promote Him*..................................6

        D.   *USERRA Is Not A Veterans' Preference Statute*.....................................................9

        E.   *Kassel Has Demonstrated Ample Evidence of*
            *Pervasive Anti-Military Animus*.............................................................................14

    **POINT II**
    **REMARKS MADE BY MIDDLETOWN AND MIDDLETOWN CITY**
    **EMPLOYEES PROVIDE SUFFICIENT EVIDENCE OF PERVASIVE**
    **ANTI-MILITARY ANIMUS TO SUPPORT HOSTILE WORK**
    **ENVIRONMENT CLAIM**................................................................................................16

    **POINT III**
    **DEFENDANTS' ARGUMENTS REGARDING 42 U.S.C. § 1983**
    **AND *MONELL* LIABILITY ARE UNRESPONSIVE TO ANY**
    **CLAIMS MADE IN THIS LAWSUIT**.........................................................................20

        A.   *Plaintiff Does Not Allege A Violation Of 42 U.S.C. § 1983*
            *Based Upon The Involvement Of Defendants Barone, Barber,*
            *Morse, Smith, And Demchak In The Promotion Decision*....................................20

        B.   *Kassel's Complaint Does Not Allege Monell Liability Against Middletown*.........21

    **POINT IV**
    **KASSEL HAS SET FORTH A PRIMA FACIE CASE OR RETALIATION**
    **IN THAT HIS PROTECTED ACTIVITY CAUSED MIDDLETOWN TO**
    **UNLAWFULLY DISCIPLINE HIM**...........................................................................22

CONCLUSION..................................................................................................................25

*Kassel v. City of Middletown, et al. (14-CV-8922/KMK)*
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- ii -

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                    **<u>Page</u>**

*Brandsasse v. City of Suffolk, Va.*, 72 F. Supp. 2d 608,
163 L.R.R.M. (BNA) 2099 (E.D. Va. 1999)................................................................21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)………………………………….......3, 4

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)………………………….............17

*Crawford v. Dep't of Transp.*, 373 F.3d 1155 (Fed. Cir. 2004).............................................11, 12

*Croft v. Village of Newark*, 35 F.Supp.3d 359 (W.D.N.Y. 2014).............................................23

*Dees v. Hyundai Motor Mfg. Alabama, LLC*, 605 F. Supp. 2d 1220 (M.D. Ala. 2009)…............17

*Dominguez v. Miami-Dade County*, 669 F. Supp. 2d 1340 (S.D. Fla. 2009),
*aff'd*, 416 Fed. Appx. 884, 2011 WL 733596.........................................................................11, 12

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004)....................................................22

*Gagnon v. Sprint Corp.*, 284 F.3d 839 (8th Cir. 2002)...................................................24

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006).........................................22

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993).........................................................17

*Hance v. Norfolk Southern Railway Co.,* 2006 U.S. Dist. LEXIS 32276
(E.D. Tenn. May 17,2006), *affirmed in part and reversed in part*,
571 F.3d 511 (6th Cir. 2009).…………………………………………………….............7

*Holcomb v. Iona Coll.,* 521 F.3d 130 (2d Cir. 2008)…………………………….........3, 4

*Kaytor v. Elec. Boat Corp.*, 609 F.3d 537 (2d Cir. 2010)…………………………….....17, 18, 20

*Lisdahl v. Mayo Foundation*, 698 F. Supp. 2d 1081, 1107 fn 21 (D. Minn. 2010),
*aff'd*, 633 F.3d 712 (8th Cir. 2011)............................................................................11

*Meritor Savings Bank v. Vinson,* 477 U.S. 57 (1986)………………………………….........17

*Mock v. City of Rome*, 851 F. Supp. 2d 428 (N.D.N.Y. 2012)……………………............17

*Monell v. Department of Social Services*, 436 U.S. 658, 701 (1978)............................................22

*Montoya v. Orange County Sheriff's Dept.*, 987 F. Supp.2d 981 (C.D. Cal. 2013)......................17

*Mullins v. Goodman Distribution, Inc.*, 694 F. Supp. 2d 782 (S.D. Ohio 2010).........................11

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)…………………………….....17, 18

*Kassel v. City of Middletown, et al. (14-CV-8922/KMK)*
<u>Plaintiff's Opposition to Defendant's Motion for Summary Judgment</u>
Memorandum of Law
- iii -

*Pfunk v. Cohere Communications, LLC,* 73 F.Supp.3d 175 (S.D.N.Y. 2014)…...........................8

*Sandoval v. City of Chicago*, 560 F.3d 703 (7th Cir. 2009)....................................................11, 12

*Sharp v. City of Houston*, 164 F.3d 923 (5th Cir. 1999)..........................................................22

*Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)............21

*Watson v. City of Kansas City*, 857 F.2d 690 (10th Cir. 1988)....................................................22

*Woodard v. New York Health & Hospitals Corp.*, 554 F. Supp. 2d 329 (E.D.N.Y. 2008)…..........8

## Other Authorities

20 C.F.R. §1002.5(l) ……………………………………………………………….....11

20 C.F.R. § 1002.19……………………………………………………………………...23

38 U.S.C. § 4303(13)…………………………………………………………..............11

38 U.S.C. § 4311(a) …………………………………………………………..............10

38 U.S.C. § 4311(b)(4)………………………………………………………………..24

42 U.S.C. § 1983............................................................................................................21-23

Fed. R. Civ. P. 56(a)……………………………………………………………….....3

N. Y. Exec. L. § 296(7)…………………………………………………….…….....23

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- iv -

## INTRODUCTION

NOW COMES Plaintiff, Matthew K. Kassel (hereinafter "Kassel"), by and through undersigned counsel, Tully Rinckey PLLC, hereby timely submits this Memorandum of Law in Opposition to Middletown the Motion for Summary Judgment submitted on September 1, 2016 by Middletown[1], and received by Plaintiff on September 1, 2016.

The facts underlying this Opposition are set forth in Plaintiff's previously filed Rule 56.1 Statement of Facts (hereinafter "PSOF") and Middletown's Rule 56.1 Statement (hereinafter "DSOF"), as well as Plaintiff's Rule 56.1 Counter-Statement of Facts (hereinafter "CSOF") and the Declaration of Matthew K. Kassel (hereinafter "Kassel Decl."), filed concurrently herewith. Plaintiff incorporates by reference each and every exhibit previously filed with his Motion for Summary Judgment as enclosures to the Declaration of Kelly Magnuson, Esq.

## PRELIMINARY STATEMENT

Middletown's Motion for Summary Judgment should be denied as they fail to articulate legitimate arguments that would result in a finding that there were no material issues of fact as to Plaintiff's claims. Middletown offers no affirmative, undisputed evidence to support its defenses, and raise legal arguments which do not apply or that misstate Kassel's claims. Middletown also affirmatively states that the material facts underlying Kassel's claims – whether Middletown considered Kassel's military service in deciding not to promote him – are in dispute, effectively rendering Middletown's motion moot at the outset.

## ARGUMENT

### POINT I
### MIDDLETOWN FAILED TO PROVIDE ANY EVIDENCE TO SUPPORT THEIR CLAIM OF ENTITLEMENT TO SUMMARY JUDGMENT.

---

[1] Plaintiff hereinafter will collectively refer to the Defendants listed in the above-captioned case as "Middletown."

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 1 -

A.   <u>*Middletown misstates the bases of Kassel's claims.*</u>

First, Middletown relies on an erroneous reading of Kassel's complaint, stating that his "failure-to-promote claim is based upon two premises: (1) that some of the remarks made by members of the Middletown Fire Department ("MFD") during the secretly recorded conversations evidence an unlawful, anti-military animus toward Kassel and (2) that the Department members who made those statements played a role in (or at least influenced) the decision not to promote Kassel."   Defendant's Motion for Summary Judgment (hereinafter "Def.'s Mot."), at 2.   At the outset, Middletown's motion simply misstates the essence of Kassel's claim against Middletown, and instead provides an inaccurate, yet convenient, interpretation of his complaint such that Middletown seeks summary judgment on claims that Kassel has not made.

The issue before the Court is not whether the MFD members who made the statements played a role in or influenced the decision not to promote Kassel, but rather whether Kassel's military service was unlawfully considered by the officials making the decision.   The fact that Middletown's discriminatory animus was caught on audio tape is just part of the evidence supporting Kassel's claims.     As Kassel argues in his own motion made pursuant to Rule 56, Kassel has established sufficient evidence that: (1) the reasons given by the deciding officials after they failed to promote Kassel explicitly indicated that they had considered his obligation to his military service, and (2) the statements made by members of MFD, taken as a whole, indicate a broader, anti-military animus endemic of the fire department and its leadership.  *See* Plaintiff's Motion for Summary Judgment (hereinafter "Pl.'s Mot."), at 7-14.

Thus, at the outset, Middletown attempts to misdirect this Court's analysis by misstating the basis of Kassel's claims and their facts upon which they are based.

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
<u>Plaintiff's Opposition to Defendant's Motion for Summary Judgment</u>
Memorandum of Law
- 2 -

B.      _Middletown concedes that the material facts supporting Kassel's claim are in dispute._

Next, Middletown states in its Motion that the Kassel's "second premise" – that "the secretly recorded conversations evidence an unlawful, anti-military animus toward Kassel" – is in dispute, thus rendering their entire motion moot at the outset.  *See* Def.'s Mot., at 2.

Middletown simply misunderstands their burden on a motion for summary judgment. Specifically, the movant must "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Further, the Court must view all facts "in the light most favorable" to the non-moving party, and the movant bears the burden of showing that there is no material question of fact.  *Holcomb v. Iona Coll.,* 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

By admitting that this premise is in dispute – even if Middletown were correctly characterizing Kassel's claims, which they are not – Middletown has conceded that, at best, they are not entitled to judgment as a matter of law, and that the ultimate issues of fact are best left for a factfinder to decide at trial.  Moreover, as these facts are taken in the most favorable light to Kassel for the purposes of ruling on Middletown's Motion for Summary Judgment, Middletown has the burden of proving that there is no issue of material fact.  *See Holcomb*, 521 F.3d at 132; *Celotex*, 477 U.S. at 323.  However, Middletown have failed to demonstrate that there is no issue of fact which should be reserved for trial, and instead started their dispositive motion off on the wrong foot by misstating Kassel's claims.  Notwithstanding the outcome of Kassel's Motion for Summary Judgment, this fact is, in and of itself, enough to defeat Middletown's motion, as the facts that Middletown state are in dispute are central to Kassel's claims.

Middletown goes on to state that, even if this premise was not in dispute, "nothing said on any of the secretly taped recordings evidences an antimilitary bias."  Def.'s Mot., at 2, n.1.

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 3 -

Middletown fail to grasp that the question of whether or not the comments made on the secretly taped recordings evidences antimilitary animus is a question of fact for the jury to decide. This question requires a balancing of the credibility of the witness that cannot be resolved on summary judgment. The Court cannot resolve this issue without weighing the evidence. As such, Middletown's motion must be denied.

Nonetheless, Kassel submits in response that the statements contained on the tape are merely symptomatic of a broader anti-military animus endemic of the fire department and its leadership. This is supported by Middletown's own statements in their motion that "the remarks most critical of Kassel simply express the speaker's view that Kassel has been choosing to place his military duties before his duties to the Fire Department", "has been abusing his 'double dipping' privileges", and that, "in the speaker's view, Kassel should show more dedication to his 'A job' with the City." Def's Mot., at 2, n.1. These remarks – that Kassel was "abusing" his "double dipping" privileges and that he should show more dedication to his job instead of the military – echo sentiments demonstrated by the officials who decided not to promote Kassel.

Furthermore, Middletown claims that it failed to promote Kassel due to concern over his ability to comply with State mandated training requirements, which are required for a firefighter in his position, yet fails to demonstrate how Kassel failed to comply with those requirements. The State of New York requires all firefighting personnel to complete uniform minimum training standards in an amount of 100 hours of in-service training. *See* Kassel Decl., at ¶¶ 3-4 (citing N.Y.C.R.R. § 426.7(a) (listing 25 different categories of training)). The annual certification of compliance with these requirements is due by the last day of December of each year, but the Shift Lieutenants at MFD set an internal deadline for compliance by the week of Thanksgiving, at the end of November of each year. *Id.*, at ¶¶ 5-6.

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 4 -

There is no dispute that Kassel was unable to attend regularly scheduled training sessions in two to three training subjects, and was thus behind three (3) to four (4) hours of training in total (merely 2-3% of the annual requirement) by the time of the promotion interview on October 28, 2013.  *Id*., at ¶¶ 8, 10.  As firefighters in Middletown only work 24-hour shifts a few time per week, it is common for them to miss regularly scheduled training sessions due to days off or leave time and make up those sessions the following days or weeks.  *Id*., at ¶ 9.  From November 1, 2013 to November 13, 2013 – in the two weeks following the interview – Kassel completed all of the training sessions he had missed due to his military service obligations.  *Id*., at ¶ 11.  This would have been done regardless of the interview process due to the soft Thanksgiving deadline. Most importantly, Kassel fulfilled all of his training requirements on or before November 12, 2013 – just fifteen (15) days after his interview with the named Defendants.  *See id*., at ¶ 13.

However, despite the fact that Kassel was never in any danger of noncompliance with the training requirements required by New York State, Middletown attempts to use a marginal shortage in training hours to justify its failure to promote Kassel.  It is important to note that at no time prior to the interview on October 29, 2013 did a supervisor or colleague of Kassel's discuss with him any concern about his ability to meet the training requirements before the compliance due date.  *See* Kassel Decl., at ¶ 15.  In fact, there was no way of Middletown knowing exactly when Kassel completed each of the training requirements because the compliance form simply required his initials in the corresponding boxes next to each training subject.  *See id*., at ¶ 14.  Yet, Middletown claims with no support whatsoever that Kassel was "the farthest behind in his training" and that he was being insubordinate by not completing the necessary training.  *See* DSOF, at ¶¶ 24; *see also* Smith Affidavit, ¶¶ 37-39.  The Court must note that the City fails to offer a single piece of evidence in regard to Kassel's alleged deficiency.

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 5 -

Thus, Kassel has consistently shown that individuals with control or input over the terms and conditions of his employment have voiced discriminatory animus towards his military service obligation.  *See* DSOF, at ¶¶ 20, 23-25; Smith Affidavit, at ¶¶ 30, 37-39, 40.

Most importantly, the named defendants directly involved in the decision not to promote him have explicitly admitted that Kassel's obligation to military service was a motivating factor in the decision not to promote him to Lieutenant.  These statements are so unambiguously clear that no reasonable jury could find that Kassel was not unlawfully discriminated against because of his military service.  Considering that the bulk of the evidence supporting Plaintiffs' claims comes directly from the admissions of the named defendants, and despite the fact that Middletown paradoxically attempts to create a genuine issue of material fact in their motion, Middletown's motion should be denied.

C.  *Middletown's arguments erroneously assume Kassel's obligation to his military service was considered in the decision not to promote him.*

Middletown attempts to excuse the decision not to promote Kassel based upon his obligation to his military service by stating, again without a shred of evidence or offer of proof, that it is undisputed that "Kassel lied or at least misled the Committee about the nature of his military obligations."  Def.'s Mot., at 3.  Middletown also mistakenly believes that citing a single explanation for the decision – which clearly references Kassel's military obligations – supports their contention that the decision not to promote Kassel was for non-discriminatory reasons.

Here, however, the assertion that Kassel lied or misled the Committee is in dispute.  Due to the nature of his military obligations, the Committee failed to understand that even though Kassel's military service is deemed by Middletown as being "voluntary," he still has an obligation to report for duty and follow orders when given.  The fact that the Committee ultimately considered Kassel's military obligations when making the decision not to promote

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 6 -

him is unlawful.  Furthermore, Middletown's assertion that the Committee members did not make any statements that can be interpreted as expressions of anti-military animus is patently false, as at least five (5) of the reasons given by the Committee following the failure to promote Kassel featured his obligation to his military service.  Middletown mistakenly believes that statements of animus or hostility are the only way to discriminate against Kassel and his military status.

The law provides that, if "the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, one of those reasons would be the employee's military position or related obligations," then a motivating factor exists.  *Hance v. Norfolk Southern Railway Co.*, 2006 U.S. Dist. LEXIS 32276, at *3 (E.D. Tenn. May 17, 2006), *aff'd by Hance v. Norfolk Southern*, 571 F.3d 511 (6th Cir. 2009).

Although Middletown asserts that "[n]o one gave any indication that Kassel's service in the military was a consideration," the fact is that the majority of the bases supporting Kassel's low rating following his interview explicitly revolve around his obligation to his military service. *See* Def.'s Mot., at 4-5.  Specifically, DeStefano's stated reasons include:

> (d) Kassel was very defensive about his failure to meet his State-mandated training requirements, and blamed it on his **military service**;
> (e) Kassel implied that he didn't need firefighter training as long as he is doing **military duty**;
> (f) Kassel repeatedly brought up his **military service** and contradictorily claimed that such service did not interfere with his ability to comply with his firefighter training obligation;
> (g) Kassel became very arrogant and accused the City of using his **military service** 'to hold him back,' even though it was Kassel who repeatedly brought up his **military service**;
> (h) Kassel could not explain how he could be a leader whose responsibility included getting firefighters under his command properly training, when he himself was failing in this obligation.

DeStefano Affidavit, ¶ 8(d)-(h) (emphases added).

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 7 -

Furthermore, Middletown appears to argue that simply because reasons other than his military service were articulated as reasons for the failure to promote Kassel, the reasons given which feature his military service obligation are inapposite.   In the USERRA context, Middletown "must show that it would have made the same decision [not to promote Kassel] regardless of [his] military service."  *Woodard v. New York Health & Hospitals Corp.*, 554 F. Supp. 2d 329, 353 (E.D.N.Y. 2008), *aff'd in part, remanded in part*, 350 F. App'x 586 (2d Cir. 2009); *see also see also Pfunk v. Cohere Communications, LLC,* 73 F. Supp. 3d 175, 189 (S.D.N.Y. 2014).

Here, however, Middletown simply does not offer any legitimate, alternative reason that Kassel was not promoted.  The vast majority of the reasons given by DeStefano regarding why Kassel was not chosen for the promotion all stem from his obligation to his military service. DeStefano emphasizes that Kassel became "defensive [when asked] about his failure to meet his State-mandated training requirements, and that Kassel brought up his military service." DeStefano Affidavit, ¶ 8(d).  Middletown fails to recognize that the Committee then began to berate and interrogate Kassel regarding his failure to meet his training requirements and ability to lead based on his absence at the station and failure to meet those requirements, and then used his obligation to military service against him in rating his interview and application package.

Middletown makes no claim that, if it weren't for Kassel's military service, he still would not have been selected for the promotion.  In fact, the reasons the Middletown do offer – that Kassel got "defensive", was unable to answer questions regarding his training obligations, his ability to supervise, and whether he could "lead a group of people by having an extended absence in a supervisor's position" – all share a common nexus to Kassel's obligation to his military service.  It is duplicitous for Middletown to turn around and provide the above "non-

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 8 -

discriminatory" reasons after interrogating a candidate for promotion about his military service, failure to meet his training requirements as a result of his military obligations, and his absences from the station while serving.  If anything, the Committee's interrogation of Kassel only further uncovered the pervasive anti-military animus endemic to the MFD and its leadership.

Lastly, although Middletown would like to utilize this point as a shield from liability, the fact that Kassel brought up military service first is inapposite.  While Kassel may have brought up his obligation to military service in response to questioning about his training requirements, the Committee insisted on continuing to question Kassel about his obligation to the military service.  As a matter of policy, this Court will be setting a dangerous precedent if it allows an employer to escape liability where an employee brings up his obligation to military service in an interview for a vacancy and the employee's military service obligation was thus considered in the hiring decision.

As such, Middletown arguments misapply the legal standard and unwittingly concede that Kassel's military service **was** considered in the decision not to promote him, despite arguing that Kassel introduced the subject into the interview and subsequently became defensive.

D.    *USERRA is not a veterans' preference statute.*

Middletown does not deny that, under USERRA, Kassel has the right to take time away from his scheduled MFD duties to fulfill his military service obligation.  *See* Def.'s Mot., at 1038 U.S.C. §4311, *et seq*.  Middletown unabashedly claims that "the City has never had a problem with Kassel taking time off from his scheduled MFD duties to voluntarily perform his military duties."  Def.'s Mot., at 10.  However, that that was certainly not the case when Kassel applied for a promotional opportunity at MFD for a supervisory position, and the very service he was obligated to perform was unlawfully considered in making the decision not to promote him.

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 9 -

Kassel does not allege, as Middletown so believes, that he should have been given preferential treatment for his military service by, for example, waiving the state's training requirement when considering him for the supervisory promotion. Def.'s Mot., at 11. Instead, Kassel's claim against Middletown revolves around the undisputed fact, by Middletown own admission, that Kassel's obligation to military service, which caused him to complete his annual training quota at a slower pace than Middletown deemed acceptable, was unlawfully considered in making the decision not to promote him. *See analysis at* Point I, Section B, *supra*.

However, Middletown portrays Kassel's Complaint as alleging USERRA to be a veterans' preference statute. Kassel has never made this argument. Under 38 U.S.C. § 4311(a), an employer may not deny a promotion because of the employee's membership in a uniformed service, performance of service, or application or obligation to perform service. The statute states that "service in the uniformed services" is defined as "performance of duty on a ***voluntary or involuntary*** basis in a uniformed service." 38 U.S.C. § 4303(13) (emphasis added). Service also includes many types of activities, including "active duty for training, initial active duty for training, inactive duty training." 38 U.S.C § 4303(13). The federal regulation defines uniformed service as the "performance of duty on a ***voluntary or involuntary*** basis," and "includes active duty, active and inactive duty for training, National Guard duty under Federal statute." 20 C.F.R. §1002.5(l) (emphasis added).

Middletown alleges that "the promotion Committee had no obligation under USERRA to ignore (or to refrain from inquiring about) Kassel's failure to keep up with his State mandated training when they were making their promotion decision, even if Kassel's failure to keep up with his training was due to his military service." Def.'s Mot., at 12. In other words, Middletown claims that the reason Kassel was passed over for promotion was due to his failure

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 10 -

to keep up with training, and any shortage in the amount of training Kassel completed by the time of the interview was due to his obligation to his military service. Essentially, Middletown would have this Court believe that it is acceptable to discriminate against Kassel for not being physically present at the MDF, even if that absence was necessitated by his military service.

Nevertheless, in support of this absurd notion, Middletown's cite several cases[2] which are deal with preference claims and fail to address the specific circumstances surrounding the instant case. For example, in *Lisdahl*, the Minnesota District Court held that the employer did not violate USERRA by not hiring an applicant that did not have the requisite certification for the position. *See* 698 F. Supp. 2d at 1107. Similarly, in *Mullins*, an Ohio District Court found that an employer was justified in not giving an employee a raise while he was on extended leave for active duty and had not received the requisite merit increases during his absence. *See* 694 F. Supp. 2d at 789-90. In *Sandoval*, the court held that an employer did not violate USERRA when it required officers on military duty to take a test on the same terms as other officers whose absence was otherwise excused. *See* 560 F.3d at 704. In *Crawford*, the court affirmed the Department of Transportation's decision not to credit an employee leave accrual for time served as a cadet at the Coast Guard Academy. *See* 373 F.3d at 1158. A Florida District Court in *Dominguez* held that Miami-Dade County was justified in denying a firefighter's request to make up an exam given while he was deployed to active duty because he was afforded both a reasonable time to prepare for his exam and an opportunity to take the test within a reasonable time after returning from his military service. *See* 669 F. Supp. 2d at 1350.

---

[2] *Lisdahl v. Mayo Found.*, 698 F. Supp. 2d 1081, 1107 fn 21 (D. Minn. 2010), *aff'd*, 633 F.3d 712 (8th Cir. 2011); *Mullins v. Goodman Dist., Inc.*, 694 F. Supp. 2d 782 (S.D. Ohio 2010); *Sandoval v. City of Chicago*, 560 F.3d 703 (7th Cir. 2009); *Crawford v. Dep't of Transp.*, 373 F.3d 1155 (Fed. Cir. 2004); *Dominguez v. Miami-Dade Cty.*, 669 F. Supp. 2d 1340 (S.D. Fla. 2009).

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 11 -

Taken as a whole, the cases Middletown wishes this Court to consider represent an entirely different class of cases, where an applicant or employee does not receive a "benefit of employment" within the meaning of USERRA that was not available to them while they were otherwise indisposed due to their military service.  Extending this premise to the facts of the instant case, the "benefit of employment" Middletown assumes Kassel believes he is entitled to would be veterans' preference, which is not alleged in Kassel's Complaint.  As such, the authority cited by Middletown in support of their arguments regarding USERRA do not control the decision of this Court and are entirely inapplicable to the present case.

As such, Kassel has established that Middletown's veterans' preference argument is not applicable here. Kassel's claim is that USERRA mandates that the employer must not consider its employee's obligation to military service and the corresponding absences in making employment decisions, regardless of the nature and length of that service, how much time it would require him to miss, and whether it was voluntary or involuntary.   Middletown would have this court believe that it is, in fact, allowed to consider Kassel's military service obligation is making employment decisions, so long as his military service is not the sole motivating factor.

Under section 4311 of USERRA, Kassel is not required to prove that his military service was *the* motivating factor in the denial of promotion to Lieutenant.  Kassel need only establish that his military service as *a* motivating factor in the employer's decision.  Here, there is ample evidence – both in the words of the decision-maker and those who were present at the interview or familiar with the leadership – that the ultimate decision not to promote Kassel was based upon his obligations to his military service.

When asked if he makes a distinction between Kassel volunteering to go Iraq and his volunteering at Stewart, DeStefano admitted that he makes employment decisions based on an

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 12 -

unlawful discriminatory basis by stating that, "[i]n regards to his employment, certainly." Ex. C, at 143:14-19. DeStefano also stated that Kassel, by volunteering for military service, was one who "avoids his responsibilities," and thereby Kassel was "letting his group down by volunteering" for military service. *Id.* at 150:16-19. DeStefano also called Wilson, Kassel's supervisor at Stewart Air National Guard Base. Wilson had written a very positive recommendation letter in which, among other things, he praised Kassel's supervisory abilities. *See* PSOF, at ¶¶ 42-44. When he spoke to Wilson he did not ask him anything about Kassel's ability to do the job, or anything to do with his qualifications for the job, and only asked about his voluntary or involuntary status in the military. *See* CSOF, at ¶44; *see also* Ex. C., at 172:12-21. Through DeStefano's questions during the interview for the promotional exam, his deposition testimony, and his line of questioning of Wilson, it is clear that the motivating factor for not promoting Kassel was his discriminatory animus towards Kassel's military service.

Besides DeStefano, many other of the Defendants made explicitly discriminatory statements to Kassel, or indicated that they were aware that Kassel's military service was the reason he had not been promoted. Amodio confirmed that the interview started off almost immediately as a series of questions related to time taken off from the fire department to serve in the military. *See* Declaration of Kelly Magnuson, Esq., Exhibit O: Transcript of Audio Recorded Conversation between Kassel and Tom Amodio (March 14, 2014) (hereinafter "Ex. O"). Paul Smith confirmed that, Kassel was "110% the pick" for promotion but was not promoted because he apparently was not present in the firehouse often enough due to his military service. *See* Declaration of Kelly Magnuson, Esq., Exhibit N: Transcript of Audio Recorded Conversation between Kassel and Paul Smith (December 19, 2013) (hereinafter "Ex. N"). Morse stated, in reference to the interview panel, "what they looked at was the military," and said that Kassel's

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 13 -

military time was "costing" the firehouse. *See* Declaration of Kelly Magnuson, Esq., Exhibit G: Transcript of Audio Recorded Conversation between Kassell and Morse (January 30, 2014) (hereinafter "Ex. G"). He further questioned Kassel's ability to do the job, asking him "what good is your authority if you're going to be off on days." *Id.* He then explained that the reason he was not promoted was the financial cost of paying him for days he was performing military service, pointing out that all the hiring committee cares about is "dollars and cents." *Id.* at 2.

In conclusion, while Middletown misstate Kassel's claims and erroneously argue that Kassel asserts that USERRA is a veterans' preference statute, Kassel has nonetheless produced ample prima facie evidence to establish Kassel's military service was a motivating factor in the decision not to promote him, such that his claims should survive Middletown's motion.

### E.   *Kassel has demonstrated ample evidence of pervasive anti-military animus.*

Despite Middletown's claims to the contrary, Kassel has alleged a sufficient factual basis for his claims, where the Middletown's own remarks – by and through the words and actions of its employees, the Mayor, and the leadership at MFD – illustrate a prevalent anti-military animus throughout the Fire Department. Middletown alleges that there is no dispute that Kassel first spoke of his obligation to military service, and Kassel hereby concedes that fact. *See* Def.'s Mot., at 15. However, the remaining facts surrounding the statements made and questions asked by the Committee during Kassel's promotion interview are in dispute, as Middletown has twisted the stated reasons for the failure to promote Kassel to suit their inaccurate interpretation and misapplication of the facts.

First, Middletown states that "there is no testimony as to anything said during the interview belying an anti-military bias harbored by any Committee member" and that "whatever was said about Kassel's military service was said out of concern for Kassel's falling behind in

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 14 -

his State mandated training and because Kassel was the one who kept bringing up his military service as his response to that concern." *Id.*, at 15.  However, Middletown fails to address the reasons given by DeStefano, which, as discussed above, explicitly demonstrate an unlawful discriminatory animus towards military service if the City views it as "voluntary."  For example, he stated that "when you volunteer to go to a war zone, it's a little bit different than volunteering to go 30, 20 miles away" (referring to Steward Air National Guard Base).  Ex. C, at 142:18-23.  In his view, domestic volunteer military service "is significantly different . . . than volunteering to go to Iraq." *Id.* at 143:5-6.  Further, Middletown cannot justify the accounts of the interview from others that were present, who explained that the Committee incessantly questioned Kassel about his military service obligation, its interference with his training quota, and whether his absences from the Fire Department would be appropriate in a supervisor role or diminish his ability to lead.  *See* PSOF at ¶¶45-46, 50-52, 57-58; Ex. C, at 150:16-19, 151: 4-14, 152:11.

Second, Middletown states that since Kassel cannot identify "stray, anti-military remarks made by any of the three Committee members, he is forced to rely upon stray remarks made by firefighters who had nothing to do with the promotion decision," and that such remarks "have no probative value, whatsoever."  Def.'s Mot., at 16.  Kassel submits, notwithstanding the argument made above that the Committee considered Kassel's military obligations when failing to promote him, that the stray remarks made by others within the MFD are indicative of a broader, pervasive anti-military animus endemic to the Fire Department.  Furthermore, while Kassel admits that these remarks could not constitute sufficient evidence of discrimination in and of themselves because they originated from those with no power to influence the decision not to promote Kassel, they are examined with far more scrutiny where they are merely a temperature gauge for the consistent attitude displayed by those in leadership.  Here, the existence of discriminatory

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 15 -

animus within both the leadership and its subordinates reveals a larger issue of pervasive discrimination throughout the employer's ranks.

For example, Paul Smith, Kassel's superior – a Lieutenant – repeatedly demeaned Kassel's military service and indicated that there was general animosity at Kassel throughout the firehouse, stating that Kassel "was already the talk of . . . 2014," and he could not "expect anyone to consider" him for a promotion because of his absences for military service. *See* Declaration of Kelly Magnuson, Esq., Exhibit "E": Transcript of Audio Recorded Conversation between Kassell and Paul Smith (January 2, 2014) (hereinafter "Ex. E"). Smith continued and said that "everybody that works here is talking about it." *See* Ex. E, at 4. Smith further insulted Kassel's military service when he told him, laughingly, that "you spend most of your time sitting at Air National Guard, doing nothing. The whole world knows it." *Id.*  In another recording, Kassel is mocked by Smith, Demchak, and other fire fighters at the station for not being promoted. *See* Declaration of Kelly Magnuson, Esq., Exhibit H: Transcript of Audio Recorded Conversation between Kassel and Paul Smith (January 31, 2014) (hereinafter "Ex. H").

Thus, Kassel has demonstrated that, in regard to the basis of Middletown's motion, there are genuine issues of material fact to be determined by a factfinder after hearing the testimonies of those present at the interview and who made the decision not to promote Kassel, as well as the secret tape recordings of the same.

## POINT II
### REMARKS MADE BY MIDDLETOWN AND OTHERS PROVIDE SUFFICIENT EVIDENCE OF PERVASIVE ANTI-MILITARY ANIMUS TO SUPPORT HOSTILE WORK ENVIRONMENT CLAIM.

The parties agree that although there is little case law regarding the standard to evaluate a hostile work environment claim under USERRA, courts, including district courts in the Second Circuit, have applied the Title VII standard to do so.  *See Meritor Savings Bank. Vinson*, 477

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 16 -

U.S. 57, 67 (1986); *Hanson v. City of Kitsap*, 21 F. Supp. 3d 1124, 1146 (W.D. Wash. 2014); *Montoya v. Orange County Sheriff's Department*, 987 F. Supp. 2d 981 (C.D. Cal. 2013); *Mock v. City of Rome*, 851 F. Supp. 2d 428, 433-434 (N.D.N.Y. 2012) (quoting *National Rail Road Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)); *Dees v. Hyundai Motor*, 605 F. Supp. 2d 1220, 1228 (M.D. Ala. 2009), *aff'd*, 368 F. App'x 49 (11th Cir. 2010).

To succeed on a hostile work environment claim Kassel must offer evidence that the employer's conduct "was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (outlining standard under Title VII); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001); *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010).  Courts look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). The key inquiry is "the nature of the workplace environment as a whole." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010).

Here, the animus was so widespread, explicit, and pervasive that any reasonable employee would consider this a hostile work environment.  As mentioned, DeStefano showed his clear antagonism to Kassel's volunteer service, and the entire interviewing body agreed with him that, as a matter of policy, they would not support or accept domestic volunteer military service of the type that Kassel had performed. *See* Ex. C, at 151:15-24[3].   This antagonism manifested

---

[3] "Q: Who should ultimately from the City of Middletown determine -- who's the ultimate arbiter of determining whether voluntary military service is something that the city should support or not? Is that you?
    A. In this case I think it was the group that did the interview, but ultimately the appointing authority was myself, but the body agreed with me."  Ex. C, at 151:15-24.

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 17 -

itself in a concrete action in the refusal to promote Kassel to Lieutenant and *carte blanche* to make derogatory comments about him, as his fellow firefighters with high frequency.

Paul Smith repeatedly demeaned Kassel's military service and indicated that there was general animosity at Kassel throughout the firehouse, when he stated that Kassel "was already the talk of . . . 2014," and he could not "expect anyone to consider" him for a promotion because of his absences for military service. *See* Declaration of Kelly Magnuson, Esq., Exhibit "E": Transcript of Audio Recorded Conversation between Kassell and Paul Smith (January 2, 2014) (hereinafter "Ex. E"). Smith continued and said that "everybody that works here is talking about it." *See* Ex. E, at 4. Smith further insulted Kassel's military service when he told him, laughingly, that "you spend most of your time sitting at Air National Guard, doing nothing. The whole world knows it." *Id.* In another recording, Kassel is mocked by Smith, Demchak, and other fire fighters at the station for not being promoted. *See* Declaration of Kelly Magnuson, Esq., Exhibit H: Transcript of Audio Recorded Conversation between Kassel and Paul Smith (January 31, 2014) (hereinafter "Ex. H").

The hostile work environment materially affected the terms and conditions of Kassel's employment. On or about October 11, 2014, Barone instructed Kassel he could no longer park where he had been parking for the 13 years of his employment with the Middletown Fire Department. *See* Declaration of Kelly Magnuson, Esq., Exhibit I: Barone Deposition Transcript (July 8, 2015) (hereinafter "Ex. I"), at 165:15-18. In another incident, On March 7, 2015 "John", a Middletown fire fighter, canceled a plan to swap shifts with Kassel. *See* CSOF, at ¶78. The firefighter sent Kassel a text message "[h]ey Matt, I finally got around to checking my voice mail. Due to the current events, I do think it is on [sic] our best interest if we cancel the swap." *See id.*

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 18 -

On April 3, 2015, Paul Smith authored a letter to Chief Barone, and signed by five other firefighters, stating that it was "impossible" to work with Kassel. *See* Declaration of Kelly Magnuson, Esq., Exhibit P: Emails to Chief Sam Barone Regarding Kassel (April 3 and 7, 2015) (hereinafter "Ex. P"), at 1.  This sentiment was confirmed by Carpenter in another email sent to Chief Barone. *See* Ex. P, at 2.  Instead of disciplining Kassel's co-workers for unlawful harassment and creating a hostile a work environment, Chief Sam Barone decided to also partake in the exacerbation of the hostile work environment. On or about April 16, 2015, Kassel was notified of pending adverse employment action pending against him and suspended without pay for thirty (30) days because of the lawful recordings that showed discriminatory animus and harassment by his co-workers.  *See* Declaration of Kelly Magnuson, Esq., Exhibit Q: Notification of Pending Suspension Without Pay (April 16, 2015) (hereinafter "Ex. Q").

This hostility towards Kassel was so pervasive that even Middletown Corporation Counsel has participated.  In Middletown's Motion for Summary Judgment, Alex Smith, Assistant Corporation Counsel, once again refers to Kassel as a "whiny, sneaky, sycophant who constantly brings up his military service in a transparent attempt to induce someone, anyone, to say something adverse to military service," and that his co-workers did indeed make fun of him, because of his "whiny personality." Def.'s Mot., at 20, n.15; *see* Smith Affidavit in Opposition to the Order to Show Cause (April 2, 2015), at ¶ 8.  To clarify that creating this hostile work environment was somehow okay, Smith footnoted these comments and stated that "[t]he tapes record typical firehouse banter and chop-busting that . . . is routine in firehouses across America." *Id.* at n.2. Although with his dicta Smith may have been trying to mitigate the reality of the hostile work environment, all he did was reinforce that it was the entire environment created that lent itself to the unlawful harassment of Kassel.  As mentioned above, it is the "the

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
<u>Plaintiff's Opposition to Defendant's Motion for Summary Judgment</u>
Memorandum of Law
- 19 -

nature of the workplace environment as a whole" that helps determine whether or not there is a hostile work environment. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010).

Thus, Kassel has demonstrated that a genuine issue of material fact exists regarding his coworkers, supervisors, and the mayor himself openly admitting their discriminatory animus towards the protected category and taking steps to materially affect the employee's terms and conditions of employment.   As a result, Kassel's hostile work environment claim under USERRA should survive Middletown's motion for summary judgment.

**POINT III**
**MIDDLETOWN'S ARGUMENTS REGARDING 42 U.S.C. § 1983 AND *MONELL*
LIABILITY ARE UNRESPONSIVE TO ANY CLAIMS MADE IN THIS LAWSUIT.**

Next, Middletown attempts yet again to conflate this Court's review of Kassel's claims by arguing against a basis of liability Kassel did not allege anywhere in his Complaint.

   A.   *Plaintiff does not allege a violation of 42 U.S.C. § 1983 based upon the involvement of Defendants Barone, Barber, Morse, Smith, and Demchak in the promotion decision.*

First, Middletown allege that "there is no evidence that either Barone, Barber, Morse, Smith, or Demchak took any part in or had any influence on that decision" and cite a number of cases based upon a *prima facie* case for a violation of 42 U.S.C. § 1983[4].  *See* Def.'s Mot., at 17-18.  However, Plaintiff's claims in the instant lawsuit are brought against the named defendants in their individual and official capacities under USERRA and NYHRL, not in a civil rights action under 42 U.S.C. § 1983.

USERRA actions must be brought against "employers," defined very broadly in the statute as "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities."   38 U.S.C.A. § 4303(4)(A); *see,*

---

[4] *See, e.g.*, *Pena v. Armor Corr. Health Inc.*, 2016 WL 4468241, 3 (E.D.N.Y. 2016); *Warren v. Goord*, 476 F. Supp. 2d 407, 413 (S.D.N.Y. 2007) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 20 -

*e.g.*, *Brandsasse v. City of Suffolk, Va.*, 72 F. Supp. 2d 608, 163 L.R.R.M. (BNA) 2099 (E.D. Va. 1999) (holding a city official with authority over hiring and firing liable as employer). Furthermore, the HRL recognizes claims for individual liability brought against: (1) employers (N.Y. Exec. Law § 296.1) or (2) persons who aid, abet, incite, compel or coerce the commission of a violation by an employer (N.Y. Exec. Law § 296.6).

Construing that provision, the Second Circuit has found that a "defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. V. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The majority of federal courts to consider the issue have found that *Tomka* is controlling law and have followed its holding, and the Second Circuit has adhered to its holding in later decisions. *See Feingold v. New York*, 366 F.3d 138, 161 n. 19 (2d Cir. 2004) (stating that "majority of courts that have considered the issue have affirmed the existence of a cause of action against individual defendants under the aid-or-abet provision of the NYSHRL" and citing cases).

Kassel has never, and does not now, allege a violation of § 1983 against Barone, Barber, Morse, Smith, or Demchak in their official capacities in his Complaint against Middletown, but rather names them in their individual capacities pursuant to USERRA and NYHRL. Thus, this argument is wholly irrelevant to Kassel's Complaint.

### B.    *Kassel's Complaint Does Not Allege* Monell *Liability Against Middletown*

Second, Middletown claims "there is no evidence that the individual defendants who allegedly contributed to the hostile environment were either acting pursuant to a City policy or custom or as final policymakers for the City." Def.'s Mot., at 20-21. Furthermore, Middletown also claims there is no "evidence that the City failed to provide a reasonable avenue for

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 21 -

complaint or that it had actual or constructive notice of the harassment yet failed to take appropriate remedial action." *Id*. (quotations omitted).

The Supreme Court in *Monell v. Department of Social Services* established that, in 42 U.S.C. § 1983 lawsuits where a municipality's individual employees are named as defendants, the local government entities themselves can also be sued for damages and injunctive relief.  436 U.S. 658, 701 (1978) (holding that municipal corporations may be named in a § 1983 lawsuit). Most typically, these actions allege constitutional violations that occurred as a result of:  (1) an officially adopted or promulgated policy; or (2) a custom or practice that is not written or formally adopted, but that is a pervasive, long-standing practice that has the force of law.[5]

However, Kassel has not alleged *Monell* liability, or any 42 U.S.C. § 183 claim against any defendant in this case, as his complaint against Middletown as his employer is based upon the rights conferred upon him by USERRA and NYHRL  *See* 38 U.S.C. § 4303(4)(A); N.Y. Exec Law § 296.1. Thus, Middletown's summary argument regarding a specific theory of liability authorized only by *Monell* and its progeny is irrelevant and requires no further response.

**POINT IV**
**KASSEL HAS SET FORTH A PRIMA FACIE CASE OF**
**RETALIATION IN THAT HIS PROTECTED ACTIVITY**
**CAUSED MIDDLETOWN TO UNLAWFULLY DISCIPLINE HIM.**

Lastly, Middletown claims that "there is no evidence that [the City's disciplinary investigation] was [conducted] in response to Kassel's protected activity or that the City's stated reason for its action was pretextual."  Def.'s Mot., at 21.  Moreover, Middletown alleges that

---

[5] *See, e.g.*, *Gregory v. City of Louisville*, 444 F.3d 725, 754 (6th Cir. 2006) (alleged custom of using overly suggestive show-ups); *Sharp v. City of Houston*, 164 F.3d 923, 936 (5th Cir. 1999) (finding a custom existed for transfers and demotion when officers reported misconduct); *Watson v. City of Kansas City*, 857 F.2d 690, 696 (10th Cir. 1988) (finding a sufficient showing of the police department's custom for treating domestic violence cases lightly).

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 22 -

"Kassel's surreptitious recordings of his superiors and fellow firefighters was a serious breach of the trust and loyalty essential to the operation of the MFD." *Id*., at 22.

Under USERRA, it is unlawful for an employer to retaliate against an employee for exercising any rights provided under USERRA "because the individual ***has taken an action to enforce a protection*** afforded any person under USERRA; testified or otherwise made a statement in or in connection with a proceeding under USERRA; assisted or participated in a USERRA investigation: or, exercised a right provided for by USERRA." 20 C.F.R. § 1002.19; 38 U.S.C. § 4311(b). Under the NYHRL it is an "unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N. Y. Exec. L. § 296(7). As mentioned above, considering that both NYHRL and USERRA are analytically the same and both claims come from the same common nucleus of operative facts, both claims will be analyzed together. To succeed on a retaliation claim, Kassel must show that his exercise of USERRA rights was a motivating factor in Middletown's action. *Croft v. Village of Newark*, 35 F.Supp.3d 359, 377-78 (W.D.N.Y. 2014).

After Middletown did not promote Kassel, he explicitly informed his superiors and co-workers about his rights under USERRA and his concerns of discrimination, and this triggered the anti-retaliation provisions. *Gagnon v. Sprint Corp.*, 284 F.3d 839 (8th Cir. 2002) (pointing out that even complaining informally to co-workers can trigger USERRA's retaliation provisions). Kassel also explicitly told Amodio, one of officials present during the interview, about USERRA. Kassel went through a slide-show presentation about the law, but then stated that he didn't need Kassel to email him the slide-show again because Amodio was "good with it"

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 23 -

and that he didn't have any questions about the law.  *See* Declaration of Kelly Magnuson, Esq., Exhibit O: Transcript of Audio Recorded Conversation between Kassel and Tom Amodio (March 14, 2014) (hereinafter "Ex. O"), at 3-4.  Lastly, when Kassel complained to Smith about his unfair treatment, Smith stated clearly that Kassel was being treated that way because of his military service.  *See* Declaration of Kelly Magnuson, Esq., Exhibit N: Transcript of Audio Recorded Conversation between Kassel and Paul Smith, (December 9, 2013) (hereinafter "Ex. N"), at 3-4.  Thus, Kassel's supervisor and coworkers were aware Kassel had exercised his USERRA rights, and the hostility Kassel felt before he had done so effectively transformed into unlawful retaliation proscribed by USERRA and NYHRL.

First, Amodio, as someone with partial control over Kassel's terms and conditions of employment, showed no concern, and took no remedial action, to protect Kassel's rights under USERRA.  Furthermore, instead of disciplining Kassel's co-workers and admonishing them for unlawful retaliation, Chief Sam Barone decided to suspend Kassel without pay for thirty (30) days.  *See* Ex. Q.

Besides failing to take any remedial action, Defendants affirmatively took retaliatory measures against Kassel by taking away his parking spot and later suspending him from work. On or about October 11, 2014, Barone instructed Kassel he could no longer park in the parking spot where he had been parking for the 13 years of his employment with the Middletown Fire Department. Barone Dep. 165:15-18.  On or about April 16, 2015, Kassel was notified of pending adverse employment action pending against him--that he would be suspended without pay by the Defendants for thirty (30) days.  *See* PSOF, at ¶80.

Because of his assertion of his rights under USERRA, Defendants denied Kassel a promotion, subjected him to a hostile work environment, and retaliated against him with specific

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 24 -

adverse employment actions. In written and oral statements, DeStefano repeatedly made an unlawful distinction between voluntary and involuntary military service when it came to evaluating plaintiff's eligibility for promotion.   *See* Declaration of Kelly Magnuson, Esq., Exhibit C: DeStefano Deposition Transcript (July 13, 2015) (hereinafter "Ex. C."), at pp. 151, 169-71, 313.  Other defendants have stated that had it not been for plaintiff's military service and related absences, he would have been selected for the position. *See, e.g.*, Declaration of Kelly Magnuson, Esq., Exhibit "D":  Smith Deposition Transcript (June 26, 2015) (hereinafter "Ex. D."), at pp. 123:18—126:14, 127:2—127:9, 136:2—136:18, 140:8—21.

With such clear statements from Middletown admitting their own unlawful behavior, no reasonable juror could find that Middletown did not violate USERRA.

## **CONCLUSION**

For all the foregoing reasons, the Kassel respectfully requests that the Court summarily deny Middletown's Motion for Summary Judgment.

Dated: September 15, 2016                            Respectfully submitted,
Albany, New York                                    TULLY RINCKEY PLLC
                                                    *Attorneys for Plaintiff Matthew K. Kassel*

                                    By:    ___/s/_____
                                            Kelly Magnuson, Esq.
                                            441 New Karner Road
                                            Albany, New York 12205
                                            Ph:  (518) 218-7100
                                            Fax: (518) 218-0496
                                            Email: kmagnuson@fedattorney.com

Cc:
        Alex Smith, Esq.                Robert N. Isseks, Esq.
     *Counsel for Defendants*              *Of Counsel*
        16 James Street                    6 North Street
     Middletown, NY 10940              Middletown, NY 10940
     Phone: (845) 346-4140             Phone: (845) 344-4322

*Kassel v. City of Middletown, et al.* (14-CV-8922/KMK)
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
Memorandum of Law
- 25 -